HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE MARK CALVERT, AS BANKRUPTCY TRUSTEE FOR THE MERIDIAN INVESTOR TRUST | CONSOLIDATED ACTION<br><br>LEAD CASE NO. C12-1585RAJ<br><br>FINDINGS OF FACT & CONCLUSIONS OF LAW<br><br>(This Order pertains to *Calvert v. Kooshian*, No. C12-1594RAJ, and to the consolidated action as a whole.) |

## I. INTRODUCTION

The court heard this matter in a bench trial on October 27 and October 28, 2014. This order constitutes the court's findings of fact and conclusions of law, in accordance with Rule 52(a)(1) of the Federal Rules of Civil Procedure. The Clerk shall SEVER this case (*Calvert v. Kooshian*, No. C12-1594RAJ) from this consolidated action, shall post this document in the severed case in addition to the consolidated case, and shall enter judgment for the Trustee, Mark Calvert, in the severed case.

Because this disposition resolves the last pending member case in this consolidated action, the clerk shall TERMINATE the consolidated action and any member case that remains open.

ORDER – 1

## II. MEMORANDUM OF DECISION[1]

### A. The Meridian Funds and Dr. Kooshian's Investment in Them

#### 1. Darren Berg Operated the Meridian Funds as a Ponzi Scheme from the Inception of the First Fund.

In December 2004, Defendant George Steven Kooshian invested $1.7 million in a Ponzi scheme. In February 2012, this court sentenced the perpetrator of that scheme, Darren Berg, to 18 years in prison based on Mr. Berg's guilty pleas to counts of wire fraud, money laundering, and bankruptcy fraud. The principal vehicles for Mr. Berg's scheme were the Meridian Mortgage investment funds, funds he touted to the public as real estate investment conduits. In reality, the Meridian Funds (there were at least eight of them) had little or no real estate investment activity. From the inception of the first Meridian Fund, Mr. Berg used his investors' money to pay his personal expenses, purchase property for himself, and to fund other ventures. He kept an extensive series of falsified records. The trial testimony of Mark Calvert, who was appointed the bankruptcy trustee of the consolidated Meridian Funds (and other entities under Mr. Berg's control) in July 2010, established Mr. Berg's fraud at a level of detail that the court need not repeat for purposes of its decision today. His testimony was bolstered by the testimony of Randy Sugarman, an experienced accountant and certified fraud examiner whom the Trustee hired to review the Meridian Fund records and other records pertaining to Mr. Berg's scheme. Their testimony at trial was more than adequate to establish by a preponderance of the evidence that Mr. Berg operated the Meridian Funds as a Ponzi scheme from their inception in 2001, and that Mr. Berg defrauded investors in the Meridian Funds from the Funds' inception.

The testimony of the Trustee and of Mr. Sugarman is bolstered by Mr. Berg's plea agreement, which the court admitted into evidence. *See In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008) (holding Ponzi scheme operator's plea agreement to be admissible in

---

[1] Findings of fact and conclusions of law "may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1).

ORDER – 2

fraudulent transfer action despite hearsay objection). In that agreement, Mr. Berg admitted to using proceeds of the Meridian Funds for a variety of unlawful purposes. He also admitted that while he told his investors that he was using their money for various real estate transactions, he in fact used that money for his other business ventures as well as his personal expenses. He admitted to using his investors' funds to pay off earlier investors, but he also admitted to taking about $100 million of his investors' money for his personal benefit. Although the term "Ponzi scheme" does not appear in the plea agreement, the plea agreement serves as Mr. Berg's admission that he operated a Ponzi scheme from at least 2001 to 2010. *See Slatkin*, 525 F.3d at 812 (holding operator's plea agreement to be proof of a Ponzi scheme).

### 2. Dr. Kooshian's Relationship with Mr. Berg

Dr. Kooshian was a Meridian Fund investor, but he also had a personal relationship with Mr. Berg. They met in approximately 2002 because they had homes near each other near Palm Springs, California. By 2003, they began to socialize with some frequency. Dr. Kooshian and his partner accompanied Mr. Berg and his partner on a trip to Florida and the Caribbean Sea in 2004, along with several other people. Mr. Berg paid for at least a substantial portion of that trip. Dr. Kooshian flew several times in private jets with Mr. Berg. He spent at least one weekend aboard Mr. Berg's yacht. Mr. Berg paid for a trip to Fiji as a Christmas present for Dr. Kooshian in 2005. Dr. Kooshian became friendly with Mr. Berg's family, including his mother and sister. Dr. Kooshian had keys to Mr. Berg's home near Palm Springs.

Dr. Kooshian also performed services for Mr. Berg. He bought and sold vehicles for Mr. Berg. Dr. Kooshian, who was once a licensed physician, prescribed medicine for Mr. Berg and received large payments from him for medical services. He looked at investment property on Mr. Berg's behalf. He shared a gardener with Mr. Berg and often paid for the gardener's services. Mr. Berg frequently wrote Dr. Kooshian sizeable checks for these services.

ORDER – 3

### 3. Dr. Kooshian's Investment in the Meridian Funds from 2004 to 2009

Mr. Berg introduced Dr. Kooshian to the Meridian Funds with the promise of a fixed annual return of 12%, distributed in monthly payments, with the ability to withdraw the initial investment at any time. In December 2004, Dr. Kooshian invested $1.7 million in the Meridian Funds. At the time, Dr. Kooshian estimated his net worth at between $4 million and $5 million. The Meridian investment was, by a factor of nearly 20, the largest single investment he had made in his life. Prior to making the investment, he asked Mr. Berg many questions and also asked many questions of Mr. Berg's partner. He looked at the website Mr. Berg created for the Meridian Funds. It is not clear if he reviewed any documents. He signed one document when he made the investment, but he did not receive a copy of it despite asking Mr. Berg for a copy. He received no statements or any other documentation of his investment. Although Dr. Kooshian knew that there were several Meridian Funds, he did not know the Fund or Funds in which he had invested. Indeed, Dr. Kooshian testified at trial that he could not be certain that his money had even been invested in a Meridian Fund.

What Dr. Kooshian could be certain about was that he received monthly payments of between $11,000 and $21,000 every month from February 2005 to December 2008. Sometimes those payments were wired directly to Dr. Kooshian's bank account; on other occasions, one of Mr. Berg's employees would personally deliver those payments by check to Dr. Kooshian's bank. Sometimes, when payments did not arrive by the 15th of the month, Dr. Kooshian would contact one of Mr. Berg's employees to expedite the payment.

On occasion, Mr. Berg asked Dr. Kooshian favors that suggested personal financial turmoil. In about 2006, he asked for Dr. Kooshian's assistance in selling a few newer Porsches worth hundreds of thousands of dollars back to a dealership. Dr. Kooshian did not believe this to be indicative of any financial trouble, because Mr. Berg bought two more cars shortly thereafter. More significantly, Mr. Berg solicited Dr.

ORDER – 4

Kooshian to loan him $5 million in early 2008.  He explained that the loan was related to his personal investments in real estate.  A January 11, 2008 email from Mr. Berg to Dr. Kooshian (admitted at trial as Exhibit 228) explained the circumstances.  That letter portrayed Mr. Berg's request for a loan as a solution to help him bridge various short-term personal real estate financing shortfalls.  The only mention of the Meridian Funds was Mr. Berg's statement that he would take a "draw" from the Meridian Funds after a March 2008 recapitalization that would net the Funds $80 million.  Dr. Kooshian did not make the loan to Mr. Berg in 2008; indeed, the evidence suggests that he exaggerated his own financial resources to Mr. Berg, and that he could not have made the loan even if he wanted to.

In both January and July of 2008, Dr. Kooshian asked Mr. Berg to return some of his principal so he could pay his attorneys for his defense in a criminal proceeding in the Central District of California.[2]  Mr. Berg arranged for a payment of $200,000 in January 2008 and a payment of $220,000 in July 2008.  There was also a payment of $80,000 in August 2008, although there was no trial testimony about that.

In November 2008, Dr. Kooshian attended a party for MTR, a bus company that Mr. Berg owned, at Mr. Berg's home.  It is unclear precisely what Dr. Kooshian heard at the party, but among other things he heard that Mr. Berg had prepared a document that he sent to Meridian investors to assure them, in light of the worsening national economic downturn, that the Meridian funds were not in distress.  Soon after the party, Dr. Kooshian wrote an email (admitted at trial as Exhibit 234) to Mr. Berg stating that he "got the sense that many of your investors had gotten nervous and had pulled funds from that arm of your business," referring to the bus company.  Dr. Kooshian also stated his belief that the "climate is extremely tenuous right now" and asked if he could "receive

---

[2] That criminal proceeding resulted in Dr. Kooshian's 2010 conviction for making a false statement.  The court is mindful that the conviction bears adversely on Dr. Kooshian's credibility.  For the most part, the court's findings today do not depend on Dr. Kooshian's credibility.  Nonetheless, the court found Dr. Kooshian's testimony credible as to the facts material to the court's determination today.

ORDER – 5

the document or letter that you said went out to your investors," because he was "trying to decide what is best for me at this point."

Just a few days later, on November 17, Dr. Kooshian emailed Mr. Berg to tell him that he had not received his regular payment from the Meridian funds. The email (admitted at trial as part of Exhibit 235) suggested that it was no different than others Dr. Kooshian had sent in the past when his payments were slightly later than he preferred. He wrote again on November 21 to state that although he had received the payment, he believed it was too small. He received a lengthy email in response from Mr. Berg (also part of Exhibit 235). That email explained, apparently for the first time, that Dr. Kooshian's account was one of a handful that Mr. Berg was handling personally. He offered some explanation of the timing of the payments and the amount of the payments. He also stated as follows:

> I'm really struggling with this constant line of communication with you of late that seems to originate from assumptions by you that we are in financial trouble. In truth, the exact opposite is true. We are as long on cash right now as we have ever been. And there is no shortage of very attractive, very profitable work out deals to buy. Lenders are selling assets at fire sale prices like I have never seen before, it's crazy. 2008 will be a record year and 2009 will be even better. I see us as one of the few companies that anticiapted [sic] this problem, planned for it, capitalized for it, and that is now poised to make a ton of money off of it. So yeah, it's frustrating to keep hearing from you (in a passive aggressive, round about way) that you fear we're in financial trouble. Again, the reverse is true.

Dr. Kooshian responded in an email (also part of Exhibit 235) in which he explained that his efforts to communicate in person with Mr. Berg in the past had resulted in angry conversations, and that he was not comfortable with them. He pointed to a recent conversation in Palm Springs where Mr. Berg had said in "extreme frustration" that he "could and would send [Dr. Kooshian's] entire investment back." He also stated as follows: "I don't think that you are in trouble or that your funds are in trouble at all now." He also pointed out, however, that he still had not received documents that he requested regarding his Meridian investment.

ORDER – 6

Not long thereafter, Mr. Berg approached Dr. Kooshian and told him that he believed that his investment in the Meridian Funds was interfering in their personal relationship, and that he would like to return his principal to him.  In January 2009, Mr. Berg made a final payment to Dr. Kooshian, for just under $1,212,000.  After that, Dr. Kooshian had no investment in the Meridian Funds.

All told, between Dr. Kooshian's initial investment in December 2004 and his final payment in January 2009, he received payments of $2,481,798.66, or $781,798.66 in addition to his investment of $1.7 million.  Many other Meridian investors were not nearly so fortunate.  Mr. Sugarman estimated their collective loss at more than $125 million.

### B. The Trustee's Claims to Reclaim the Principal and Fictitious Interest Dr. Kooshian Received

The Trustee filed this adversary proceeding against Dr. Kooshian in June 2012. On Dr. Kooshian's motion, the court withdrew the reference of that proceeding from the Bankruptcy Court.  The Trustee's complaint raises six claims, consisting of three pairs of claims for avoidance of actually fraudulent transfers and avoidance of constructively fraudulent transfers.  Each pair of claims targets transfers from a different source: one pair targets transfers from the Meridian Funds; one pair targets transfers from entities, other than the Meridian Funds, that Mr. Berg controlled and used to transfer money in connection with his scheme; the remaining pair targets transfers from Meridian Greenfield, another entity that Mr. Berg used to perpetuate his scheme.  The court finds that those claims collectively cover any source from which Mr. Berg's payments to Dr. Kooshian came.[3]

---

[3] The Trustee's complaint states seven claims—the six fraudulent transfer claims the court has mentioned as well as a claim invoking § 502 of the Bankruptcy Code.  11 U.S.C. § 502.  Section 502 applies only to the allowance or disallowance of a creditor's claims on a bankruptcy estate. Although the Trustee insisted in the pretrial order that it was pursuing all seven of its claims (Dkt. # 77 at 1), he presented no evidence that Dr. Kooshian made filed a claim in the bankruptcy proceeding, and no argument suggesting that the Trustee had a viable § 502 claim against Dr. Kooshian.  The court accordingly dismisses the § 502 claim with prejudice.

ORDER – 7

Although the Trustee claims that Mr. Berg's payments to Dr. Kooshian were both actually and constructively fraudulent, the court declines to consider the claim of constructive fraud. As the court will soon discuss, those payments were actually fraudulent. Whether they were also constructively fraudulent matters only in determining who bears the burden of proof as to Dr. Kooshian's good faith in receiving those payments. *Donell v. Kowell*, 553 F.3d 762, 771 (9th Cir. 2008). The court's decision today would be the same regardless of which party had the burden to prove Dr. Kooshian's good faith or lack thereof.

### 1. All Payments Mr. Berg Made to Dr. Kooshian in Connection with His Meridian Funds "Investment" Were Actually Fraudulent.

The Trustee invokes both the fraudulent transfer provisions of the Bankruptcy Code and the fraudulent transfer provisions from Washington's version of the Uniform Fraudulent Transfer Act ("UFTA," RCW Ch. 19.40). Under the Bankruptcy Code, a transfer is actually fraudulent where the debtor made it "with actual intent to hinder, delay, or defraud" any creditor. 11 U.S.C. § 548(a)(1)(A). The UFTA defines actual fraud in essentially the same way. RCW 19.40.041(a)(1) (requiring "actual intent to hinder, delay, or defraud any creditor of the debtor").

In a Ponzi scheme, like the one that the court has found Mr. Berg was operating at all times relevant to Dr. Kooshian's investment, the mere existence of the scheme suffices to establish actual intent to defraud. *Donell*, 553 F.3d at 770; *see also In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008); *Slatkin*, 525 F.3d at 814. Payments to a Ponzi scheme investor are fraudulent whether they are characterized as profit or as return of the initial investment. *Donell*, 553 F.3d at 771. The court has already found that Mr. Berg operated a Ponzi scheme at all times relevant to Dr. Kooshian's investment. That is in part because of the testimony of the Trustee and Mr. Sugarman, and in part because of Mr. Berg's plea agreement. *See Slatkin*, 525 F.3d at 814 ("We now hold that a debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules

ORDER – 8

of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) and [California's version of the UFTA], and precludes relitigation of that issue."). Because of that finding, the court concludes that the payments Mr. Berg made to Dr. Kooshian in connection with his "investment" in the Meridian Funds were made with actual fraud. *See AFI Holding*, 525 F.3d at 704 (finding payments in Ponzi scheme to have been made with actual fraud).

Dr. Kooshian attempted to muddy the evidence of actual fraud by contending that there was no specific evidence that the specific Meridian Fund or Funds into which he invested were operated as Ponzi schemes as the time he invested in them and received payments. His premise is mistaken. The testimony of the Trustee and Mr. Sugarman established by a preponderance of evidence that *all* of the Meridian Funds were Ponzi schemes from their inception. Still, because there was evidence that Mr. Berg used the Meridian Funds for at least a small quantum of potentially legitimate investment activity, Dr. Kooshian seemed to suggest at trial that the Trustee's obligation was to prove that none of the payments he received were the result of legitimate investment activity. The law does not impose that burden on the Trustee. *Slatkin*, 525 F.3d at 814 (rejecting investors' claim "that the Trustee must demonstrate the source of each of the transfers to them and demonstrate that the source of those transfers was not 'legitimate,'" holding instead that "once the existence of a Ponzi scheme is established, payments received by investors as purported profits . . . are deemed to be fraudulent transfers as a matter of law").

Moving away from Dr. Kooshian's unsuccessful attempt to undermine the Trustee's proof of actual fraud, the court turns to his two affirmative defenses: the defense available to transferees who took payments "in good faith and for reasonably equivalent value," as well as the statute of limitations.

ORDER – 9

### 2. Dr. Kooshian Took the Meridian Fund "Investment" Payments in Good Faith.

The UFTA provides a defense for a transferee who "took in good faith and for a reasonably equivalent value . . . ." RCW 19.40.081(a). The Bankruptcy Code provides a similar defense, permitting a transferee who "takes for value and in good faith" to retain a transfer "to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." 11 U.S.C. § 548(c). There is no dispute that $1.7 million of the payments Dr. Kooshian received were for value – they equaled the principal he invested. As to the approximately $782,000 in profit that he received, there was no evidence that he took for value, which is fatal to his good faith defense as to that profit. The Trustee is entitled, at a minimum, to avoid the payments to the extent of that profit. What remains is to decide whether Dr. Kooshian received the payments (of both principal and profit) in good faith.

A transferee's knowledge that he is receiving payments from someone operating a Ponzi scheme is sufficient to establish a lack of good faith, *Hayes v. Palm Seedlings Partners-A (In re Agretech)*, 916 F.2d 528, 535 (9th Cir. 1990), but lesser showings can also suffice. Where a transferee objectively should have known of the fraudulent nature of a transfer, which is to say that "circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a *diligent* inquiry would have discovered the fraudulent purpose," the transferee does not take in good faith. *Id.* at 536 (emphasis in original).

Although the Trustee made much at trial of Dr. Kooshian's privileged position as a friend of Mr. Berg, the Trustee proved nothing about that relationship that materially distinguished Dr. Kooshian from other investors who Mr. Berg duped. There was no evidence that Dr. Kooshian actually knew that Mr. Berg was running a Ponzi scheme, or was engaged in any other wrongdoing as to the Meridian Funds. Emails from Mr. Berg to Dr. Kooshian show that in at least one respect he treated his friend like any other investor – he unfailingly kept up the charade that the Meridian Funds were engaged in

ORDER – 10

legitimate investment activity. The Trustee established at trial that Dr. Kooshian knew that the 12% annual return that Mr. Berg promised was a surprisingly high return, but that does not distinguish Dr. Kooshian from any other investor in the Meridian Funds.

Dr. Kooshian did not know that the Meridian Funds were part of a Ponzi scheme; the evidence at trial also established that he had no reason to suspect that they were part of a Ponzi scheme. Dr. Kooshian had notice at various times that Mr. Berg himself was perhaps in financial distress, but the court finds that a reasonable person in Dr. Kooshian's position would not have believed that was evidence of distress *in the Meridian Funds*. There was no evidence that Mr. Berg (or anyone else) revealed anything to Dr. Kooshian that suggested any trouble with the Meridian Funds, at least during the time Dr. Kooshian was receiving payments. The Trustee asks the court to conclude that a reasonable person in Dr. Kooshian's shoes would have seen the signs of Mr. Berg's personal financial turmoil as evidence of turmoil at the Meridian Funds. Instead, the court finds that a reasonable person in Dr. Kooshian's shoes would have noticed that his Meridian payments came every month, as Mr. Berg promised. The only disputes were over precisely which day of the month the payments were received. Throughout his investment in the Meridian Funds, Dr. Kooshian had every reason to believe he would continue to receive precisely his promised payout. That payout came even as Mr. Berg revealed some turmoil in his personal finances.

Even if the court were to set aside its finding that Dr. Kooshian had no reason to be on inquiry notice of Mr. Berg's misdeeds, however, what would a reasonably diligent inquiry have discovered? There is no evidence that Dr. Kooshian would have discovered anything. Dr. Kooshian's simple requests for documents relating to his investment were rebuffed or ignored, or Mr. Berg simply put off a response. The emails admitted at trial show that even the most mild inquiries regarding Meridian were met with boasts of Meridian's success. Putting aside that the Trustee offered no suggestion of what Dr. Kooshian should have done to investigate any suspicions he had regarding the Meridian

ORDER – 11

Funds, there is no indication that Dr. Kooshian could have discovered anything that would have alerted him to the fraud. Mr. Berg, as the Trustee's own witnesses repeatedly noted, kept detailed false financial records to cover his tracks. The court finds no support for the notion that Dr. Kooshian, even if he had had reason to inquire further into the Meridian Funds, would have discovered something that no other investor discovered.

Dr. Kooshian received special treatment from Mr. Berg as a result of their friendship. That special treatment allowed him to receive individualized payments on his investment, to withdraw principal on several occasions, and, ultimately, to obtain a return of all of his remaining principal in January 2009. But giving a friend special treatment is not evidence of wrongdoing. Dr. Kooshian was not on inquiry notice of any fraud at the Meridian Funds, and he would likely have discovered nothing even if he had made a diligent inquiry.

For the foregoing reasons, the court concludes that Dr. Kooshian received his payments from Mr. Berg in good faith. As to the nearly $782,000 in profit that he received, his good faith is no defense. But the Trustee cannot avoid the transfer of the $1.7 million in principal returned to him.

**3.     No Statute of Limitations Provides a Defense to Dr. Kooshian.**

The Trustee filed his adversary proceeding against Dr. Kooshian in June 2012. The UFTA permits a creditor to avoid an actually fraudulent transfer provided he sues within four years of the transfer (or even later, in some circumstances). RCW 19.40.091(a). The Bankruptcy Code permits a trustee to void an actually fraudulent transfer that occurred within two years before the filing date of the petition.

The only transfer that matters, for purposes of the court's judgment today, is the final transfer of just over $1.2 million to Dr. Kooshian in January 2009. That transfer plainly occurred less than four years before the Trustee sued Dr. Kooshian. And, although the Trustee did not point out which date the court should deem the petition

ORDER – 12

filing date in this case, there is no question that it occurred sometime in 2010, less than two years after that final transfer to Dr. Kooshian.

The court treats that final payment as a payment that included the entirety of the approximately $782,000 in profit that Dr. Kooshian received. *Donell*, 533 F.3d at 762 ("The district court may presume that the earliest payments received by the investor are payments against the investor's claim for restitution."). The Trustee timely sued as to that final transfer, leaving the court with no need to decide whether the Trustee timely sued as to previous payments.

### III.  CONCLUSION

Based on the foregoing findings and conclusions, the court concludes that Dr. Kooshian is liable to the trustee for $781,798.66, with prejudgment interest accruing beginning on June 18, 2012, the date that the Trustee filed this adversary proceeding against Dr. Kooshian. *Donell*, 533 F.3d at 772 (noting court's discretion to award prejudgment interest, and that prejudgment interest is an "ingredient of full compensation that corrects judgments for the time value of money") (quoting *In re P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir. 1998)). The court chooses that date because the court finds it is the first date that Dr. Kooshian had reason to know before then that he was obligated to return the profit from his "investment." It would be inequitable to hold him responsible for interest accruing on that profit before that date. Because the Trustee can take advantage of Washington's prejudgment interest law, the court awards prejudgment interest at Washington's default rate of 12%. RCW 19.42.010(1).

The Clerk shall SEVER this case (*Calvert v. Kooshian*, No. C12-1594RAJ) from this consolidated action, shall post this document in the severed case in addition to the consolidated case, shall DISMISS the severed case, and shall enter judgment for the Trustee, Mark Calvert, in the severed case.

ORDER – 13

Because all of the cases in this consolidated action have now reached a conclusion, the clerk shall TERMINATE the consolidated action and any member case that remains open.

DATED this 14th day of May, 2015.

*Richard A. Jones*
———————————————
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 14